| ARAPAHOE COUNTY DISTRICT COURT<br>STATE OF COLORADO<br>7325 S Potomac St #100<br>Centennial, Colorado 80112<br>(303) 645-6600 | DATE FILED<br>July 17, 2025 2:30 PM<br>FILING ID: F303E4E0EF3AE<br>CASE NUMBER: 2025CV31689 |
|---|---|
| Plaintiff:<br>**MARC PETERS**<br><br>**v.**<br><br>Defendants:<br><br>**THE RECESS FACTORY, LLC; LTF TRIATHLON SERIES LLC; LIFE TIME, INC.** | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff:*<br>Robert E. Caldwell, Jr., Esq., #47385<br>WILHITE, ROSE & ROBERTS P.C.<br>1600 Ogden Street<br>Denver, CO 80218<br>Phone Number: (303) 839-1650<br>FAX Number: (303) 832-7102<br>E-mail: rcaldwell@wilhitelawfirm.com | Case No.<br><br>Div.<br><br><br>*JURY TRIAL REQUESTED* |
| **COMPLAINT AND JURY DEMAND** ||

COMES NOW, Plaintiff Marc Peters, by and through counsel, Wilhite, Rose & Roberts.,

and for his Complaint against the above-named Defendants alleges and avers as follows:

## PARTIES

1. At all times relevant hereto, Plaintiff Marc Peters was and is an individual who competed in the Leadville Trail 100 MTB Stage Race in the State of Colorado when he was injured.

2. At all times relevant hereto, Defendant The Recess Factory LLC ("Recess Factory") was and is a Colorado formed and domiciled limited liability corporation, regularly conducting business in the State of Colorado.

    a. Defendant Recess Factory at all relevant times was contracted to provide Defendants LTF Triathlon Series LLC and Life Time, Inc. with services that

**EXHIBIT A**

included setting up the Leadville Trail 100 MTB Stage Race course, course sections, and venue.

b.  As part of that contract, Defendant Recess Factory would discuss with Defendants LTF Triathlon Series LLC and Life Time, Inc. needs and responsibilities for the race season.

3.  At all times relevant hereto Defendant LTF Triathlon Series LLC ("LFT") was and is a foreign limited liability company. Defendant LTF is a subsidiary of Defendant Life Time, Inc. and manages triathlons, marathons, and other endurance sports.

4.  At all relevant times hereto, Defendant Life Time, Inc. ("Life Time") was and is a foreign corporation. Defendant Life Time is the parent company to subsidiary Defendant LTF among other subsidiaries. LFT and Life Time are collectively referred to as "Life Time Defendants."

## JURISDISCTION AND VENUE

5.  Plaintiff incorporates all allegations made elsewhere in this Complaint.

6.  Venue is proper in state court because Defendant The Recess Factory is a Colorado defendant.

## GENERAL FACTS – THE LEADVILLE TRAIL 100 MTB STAGE RACE

7.  Plaintiff incorporates all allegations above by reference here.

8.  At all relevant times, Life Time Defendants were engaged in the business of planning, organizing, promoting, directing, managing, and/or operation over thirty (30) "Athletic Events" across the United States, such as half marathons, marathons, train runs, bicycle races, mountain bicycle races, and triathlons.

9.  Life Time Defendants represent to the public that they provide "premium experiences

designed to highlight and fulfill your training at any level" at its "Athletic Events."

10. Life Time Defendants represent to the public that their goal is to "deliver an exceptional event experience for both participants and spectators" at its "Athletic Events."

11. In 2010, Life Time Defendants purchased the "Athletic Events" titled the "Leadville Race Series," consisting of the following events: mountain bicycle races, running races, and training camps.

12. Life Time Defendants and their affiliates and subsidiaries, including Defendant Recess Factory, planned, organized, promoted, directed, managed, operated, and/or controlled an "Athletic Event" titled the "Leadville Trail 100 MTB Stage Race" in Leadville, Colorado in 2023.

13. The Leadville Trail 100 MTB Stage Race is a three-stage qualifying race for the Leadville Trail 100 MTB and is a 103-mile mountain biking race broken into three days (stages). The race begins at 9,200-feet and rises to a high elevation point of 12,516-feet, and participants endure a total of 13,129-feet of elevation gain while biking across rough forest service roads and double and single dirt tracks.

14. The Leadville Trail 100 MTB Stage Race is intended to have a larger number of participants: in 2023, more than 1,750 riders participated.

15. At all relevant times, Defendants were required to follow the "Special Events on Colorado State Highways: Guidelines for Event Organizers" produced by the Colorado Department of Transportation (hereinafter the "Guidelines").

16. Under the Guidelines, Defendants were required to review the racecourse to determine potential problems that could endanger riders and equipment.

17. Defendants recklessly failed to review the course to determine potential problems that could

endanger riders and equipment.

18. At all relevant times, Defendants knew that failing to review the course to determine potential dangerous conditions and problems could endanger riders and equipment and could result in serious injury or death of race participants.

19. Under the Guidelines, Defendants were required to notify participants of the potential problems that could endanger riders and equipment.

20. At all relevant times, Defendants recklessly failed to notify participants of potential problems that could endanger riders and equipment.

21. At all relevant times, Defendants knew that failing to notify participants of potential problems that could endanger riders and equipment could result in serious injury or death of race participants.

22. Pursuant to the Guidelines, Defendants should have retained flaggers, marshals, and/or event staff to perform the following: warn participants prior to a hazard along the route and direct participants within the event and/or positioned along the route.

23. At all relevant times, Defendants recklessly and knowingly failed to retain flaggers, marshals, and/or event staff to perform the following: warn participants prior to a hazard along the route and direct participants and spectators within the event and/or positioned along the route.

24. At all relevant times, Defendants knew that failing to retain flaggers, marshals, and/or event staff to warn participants prior to a hazard along the route and direct participants within the event and/or positioned along the route could result in the serious injury or death of Race participants.

25. Pursuant to the Guidelines, Defendants should have rented race equipment from the

Colorado State Patrol such as barriers, signs, cones, and/or portable variable message signs to adequately mark the course and any dangerous conditions to ensure the safety of Race participants.

26. At all relevant times, Defendant recklessly and knowingly failed to rent race equipment from the Colorado State Patrol such as barriers, signs, cones, and/or portable variable message signs to ensure the safety of Race participants.

27. Defendants knew that failing to rent race equipment from the Colorado State Patrol such as barriers, signs, cones, and/or portable variable message signs to ensure the safety of its Race participants could result in serious injury or death of Race participants.

28. At all relevant times, Defendants planned, organized, promoted, directed, managed, operated, and/or controlled the Race.

29. At all relevant times, Defendants chose to make the Race an on-road course and off-road course utilizing forest service roads, county roads, city roads, dirt trails, and state highways.

30. At all relevant times, Defendants knew making the Race an on-road course and off-road course was extremely dangerous and reckless due to the presence of motor vehicles on the race course with Race participants competing at high speeds.

31. At all relevant times, Defendants were responsible for the inspection, condition, and maintenance of the race course for the Race to ensure Race participants were not exposed to unreasonable risk of injury.

32. At all relevant times, Defendants recklessly and knowingly failed to inspect and maintain the race course for the Race to ensure Race participants were not exposed to unreasonable risk of injury.

33. Defendants knew that failing to properly inspect and maintain the race course for the Race

to ensure Race participants were not exposed to unreasonable risk of injury could result in serious injury or death of Race participants.

34. Defendants "all drive parts of the course" and "all have eyes on it" per Race Director Tamira Jenlink on February 2024.

35. Within the Guidelines, Defendants "make sure that [they] at least meet those guidelines, and then anything that [they] can do beyond that to make sure that [they] cover off on any potential hazards" according to Michael Melley in 2024 on behalf of Defendant LTF.

36. When Defendants "send someone out to mark the course, they look for hazards, they look for any potential issues," according to Michael Melley in 2024 on behalf of Defendant LTF.

37. Defendants will double-check within a week of the event to make sure there is not a potential hazard according to Michael Melley in 2024 on behalf of Defendant LTF.

**GENERAL FACTS – PLAINTIFF MARC PETERS**

38. Plaintiff incorporates by reference the allegations above herein.

39. Plaintiff Marc Peters is a former professional motocross rider.

40. Plaintiff became a top Pro-Am racer before turning professional in 1987, and his career took him all over the world, racing in prestigious events in England, Italy, Switzerland, France, Germany, the Middle East, Mexico, Colombia and more.

41. In 1992, Plaintiff began having a key role in shaping racing parks across Southern California, while competing.

42. By 1996, Plaintiff was assisting motocross legends with their Supercross tracks.

43. In 1997, Plaintiff began constructing the Kawasaki factory track in Corona, California, marking the beginning of his extensive work building tracks for major brands like Suzuki, Yamaha, KTM, and Honda.

44. This experience expanded as he traveled with MX Sports, creating and maintaining professional and amateur racetracks across the United States.

45. This experience resulted in Plaintiff's creation of the company Factory Tracks where he designs world-class tracks for professional and amateur riders.

46. Plaintiff has been called "an artist with a bulldozer" and "[o]ne of the top track designers and builders in the nation, if not the world," per *Journal Review*.

47. Plaintiff has built over 500 tracks across the world.

48. Plaintiff has used his experience in developing supercross and motocross tracks to help friends design bicycling courses (*e.g.* 2017 Peace on the Road 69-mile road bike ride).

49. Based on Plaintiff's experience as a professional motorcross and supercross competitor as well as professional racetrack design professional, Plaintiff had expectations of what reasonable dangers he could expect from the Race.

50. For the Race, an individual racecourse sweeper volunteer had notified Defendants Life Time and LFT of a particularly dangerous pothole/deteriorated road spot ("pothole") on the racecourse, weeks in advance of race day, July 28, 2023.

51. The racecourse sweeper was an experienced mountain bike cyclist and racer.

52. That racecourse sweeper volunteer's duties were to follow the slowest rider to the finish line.

53. That racecourse sweeper routinely rode the racecourse in the days before the Race.

54. The first time the racecourse sweeper rode the racecourse was July 9, 2023.

55. During that ride the racecourse sweeper saw the pothole on the Carter summit descent.

56. The pothole was 5-6 feet across and one foot deep, in the middle of the road, difficult to see due to the way the sun comes through the trees.

57. Within a week of that ride, the racecourse sweeper informed Tamara Jenlink about the

pothole.

58. During that conversation, the racecourse sweeper encouraged Tamara Jenlink to repair the pothole before the Race.

59. Tamara Jenlink's response to the racecourse sweeper was, "Well, you know this is a mountain bike race, right?"

60. The racecourse sweeper believed this response meant Tamara Jenlink would not do anything about the pothole.

61. The racecourse sweeper believed all that was necessary to fix the pothole was to call the county to repair it.

62. The racecourse sweeper told other racers about the communication, and they expressed shock and concern.

63. The racecourse sweeper told Tamara Jenlink that the pothole was large and dangerous.

64. In 2023, Plaintiff paid Defendants to compete in the Race.

65. At all relevant times, Defendants recklessly, wantonly, and knowingly failed to implement adequate or necessary precautions to protect the safety of Plaintiff on their racecourse.

66. At all times, Plaintiff participated in the Race with due regard for his own safety and the safety of others.

67. At all times, Plaintiff did not reasonably expect the significantly dangerous size of pothole that the racecourse sweeper claimed to have pointed out to Defendants weeks in advance of the Race.

### GENERAL FACTS – THE JULY 28, 2023, RACE INCIDENT

68. Plaintiff incorporates by reference the allegations made in the above paragraphs herein.

69. On July 28, 2023, Plaintiff began the Race.

70. When Plaintiff rode onto County Road 9 next to Turquoise Lake in an unincorporated part of the racecourse, he was following a group of racers.

71. Plaintiff and the other racers were traveling upwards of 40 mph downhill.

72. Suddenly and without warning, Plaintiff's bike violently jerked, and he flipped over his bike and tumbled down the road.

73. As a result of his crash, Plaintiff sustained among other injuries a broken shoulder in the joint and blade, collapsed lung, concussion and terrible road rash.

74. Despite being informed of the dangerous pothole, Defendants recklessly, wantonly, and knowingly failed to place barriers, signs, cones, portable variable message signs, flaggers, marshals, and/or event staff near and around the pothole to warn Race participants like Plaintiff of the existence and dangerousness of the pothole.

75. Defendants knew that failing to place barriers, signs, cones, portable variable message signs, flaggers, marshals, and/or event staff near and around the pothole to warn Race participants like Plaintiff of the existence and dangerousness of the pothole could result in serious injury or death of Race participants like Plaintiff.

76. Plaintiff did not agree to waive Defendant's willful, reckless, and wanton conduct of knowingly failing to place barriers, signs, cones, portable variable message signs, flaggers, marshals, and/or event staff near and around the pothole.

77. The pothole is not what racers like Plaintiff would reasonably expect without warning in the Race.

78. At all relevant times, Plaintiff acted like a reasonable, prudent racer in the Race.

79. The pothole was repaired within hours of Plaintiff's injuries.

**FIRST CLAIM FOR RELIEF**

## NEGLIGENCE

80. The allegations contained in each of the above paragraphs are incorporated herein by reference.

81. At all relevant times, Defendants had a duty to exercise reasonable care in planning, organizing, promoting, directing, managing, operating, and/or controlling the Race so as to protect participants from unreasonable risk of harm.

82. At all relevant times, Defendants had a duty to exercise reasonable care to protect their participants from unreasonable risk of harm including, but not limited to, protecting their participants while racing from the unreasonably dangerous pothole.

83. At all relevant times, Defendants had a duty to exercise reasonable care to warn its participants about unreasonable risks of harm including, but not limited to, warning its participants of the unreasonably dangerous pothole.

84. At all relevant times, Defendants had a duty to reasonably and appropriately mark and/or otherwise identify through marshals and/or event staff hazards existing on the race course.

85. Defendants negligently, recklessly, willfully, and wantonly breached its duties by:

   a. Failing to take any preventative action to protect participants from the unreasonably dangerous pothole;

   b. Failing to warn participants of the unreasonably dangerous pothole by use of barriers;

   c. Failing to warn participants of the unreasonably dangerous pothole by use of flags;

   d. Failing to warn participants of the unreasonably dangerous pothole by use of cones;

e. Failing to warn participants of the unreasonably dangerous pothole by use of tape;

f. Failing to warn participants of the unreasonably dangerous pothole by use of any warning signage;

g. Failing to warn participants of the unreasonably dangerous pothole by use of flaggers;

h. Failing to warn participants of the unreasonably dangerous pothole by use of marshals;

i. Failing to warn participants of the unreasonably dangerous pothole by use of event staff;

j. Failing to warn participants of the unreasonably dangerous pothole by use of barriers.

86. As a direct and proximate result of Defendants' negligent, reckless, willful, and wanton breach of their duties, Plaintiff has suffered traumatic physical, and/or emotional, and/or psychological injuries, and/or disabilities and/or economic losses and injuries which injuries, damages and losses are permanent in nature and which losses Plaintiff has suffered in the past and will suffer in the future.

87. As a direct and proximate result of Defendants' negligent, reckless, willful, and wanton breach of their duties, Plaintiff has and will continue to endure, pain and suffering, property loss, loss of enjoyment of life, expenses for the services of doctors and other health care providers and medical supplies, and other such losses.

88. As a direct and proximate result of Plaintiff's injuries, the Plaintiff will be prevented from engaging in certain social and recreational activities normal to his lifestyle prior to this

incident and will otherwise be prevented from participating in and enjoying the benefits of a

full and complete life.

## SECOND CLAIM FOR RELIEF IN THE ALTERNATIVE
## STATUTORY PREMISES LIABILITY § 13-21-115

89. The allegations contained above are incorporated herein by reference.

90. At the time Plaintiff was injured on Defendants' racecourse, Plaintiff was an invitee.

91. At all relevant times, Defendants were landowners.

92. At the time of Plaintiff's race, and with regard to the racecourse on which Plaintiff was

injured, Defendants were in possession of the real property racecourse where Plaintiff was

injured, were responsible for the condition of the real property where Plaintiff was injured,

and/or was responsible for the activities conducted or circumstances existing on the real

property where Plaintiff was injured.

93. At all relevant times, Defendants owed duties to Plaintiff to maintain the Race premises in a

reasonably safe condition and prevent dangerous conditions of which they were aware or

should have been aware.

94. At all relevant times, Defendants were aware or should have been aware of the dangerous

condition pothole on its Race premises.

95. Defendants, or its agents and/or employees, unreasonably failed to exercise reasonable care

to protect the Plaintiff and others similarly situated.

96. Defendants willfully, wantonly, recklessly and unreasonably failed to comply with their duties

to Plaintiff in the following respects, including, but not limited to:

    a. Failing to take any preventative action to protect participants from the

       unreasonably dangerous pothole;

b. Failing to warn participants of the unreasonably dangerous pothole by use of barriers;

c. Failing to warn participants of the unreasonably dangerous pothole by use of flags;

d. Failing to warn participants of the unreasonably dangerous pothole by use of cones;

e. Failing to warn participants of the unreasonably dangerous pothole by use of tape;

f. Failing to warn participants of the unreasonably dangerous pothole by use of any warning signage;

g. Failing to warn participants of the unreasonably dangerous pothole by use of flaggers;

h. Failing to warn participants of the unreasonably dangerous pothole by use of marshals;

i. Failing to warn participants of the unreasonably dangerous pothole by use of event staff;

j. Failing to warn participants of the unreasonably dangerous pothole by use of barriers.

97. As a direct and proximate result of Defendants' negligent, reckless, willful, and wanton breach of their duties, Plaintiff has suffered traumatic physical, and/or emotional, and/or psychological injuries, and/or disabilities and/or economic losses and injuries which injuries, damages and losses are permanent in nature and which losses Plaintiff has suffered in the past and will suffer in the future.

98. As a direct and proximate result of Defendants' negligent, reckless, willful, and wanton breach of their duties, Plaintiff has and will continue to endure, pain and suffering, property loss, loss of enjoyment of life, expenses for the services of doctors and other health care providers and medical supplies, and other such losses.

99. As a direct and proximate result of Plaintiff's injuries, the Plaintiff will be prevented from engaging in certain social and recreational activities normal to his lifestyle prior to this incident and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life.

## VICARIOUS LIABILITY

100. The allegations contained in each of the above paragraphs are incorporated herein by reference as if now set forth herein.

101. At the time of the incident, Defendants and their agents, apparent agents, servants, joint venturers and/or employees were working within the course and scope of their employment and/or volunteer work with Defendants which Defendants also had the right to control and supervise them in performing their work and services at the site and premises.

102. At the time of the incident, Defendants owed Plaintiff a duty of care to properly maintain the site and premises and otherwise provide a safe Race for Plaintiff.

103. Defendants negligently breached that duty of care by creating or allowing a dangerous condition to exist at the time of the incident and then failed to take the proper actions as specified in each of the above claims for relief, allowing Plaintiff to be injured.

104. As a direct and proximate result of Defendants' negligent, reckless, willful, and

wanton breach of their duties, Plaintiff has suffered traumatic physical, and/or emotional, and/or psychological injuries, and/or disabilities and/or economic losses and injuries which injuries, damages and losses are permanent in nature and which losses Plaintiff has suffered in the past and will suffer in the future.

105.    As a direct and proximate result of Defendants' negligent, reckless, willful, and wanton breach of their duties, Plaintiff has and will continue to endure, pain and suffering, property loss, loss of enjoyment of life, expenses for the services of doctors and other health care providers and medical supplies, and other such losses.

106.    As a direct and proximate result of Plaintiff's injuries, the Plaintiff will be prevented from engaging in certain social and recreational activities normal to his lifestyle prior to this incident and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life.

107.    Defendants are vicariously liable for the negligent conduct of its agents, apparent agents, servants, joint venturers and/or employees.

**WHEREFORE**,

Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendants, in an amount to fairly compensate him at trial for:

1.  Economic damages, including but not limited to, past, present, and future medical and rehabilitation expenses, out-of-pocket expenses, past and future lost wages;

2.  Non-economic damages, including, but not limited to, pain and suffering, loss of enjoyment of life, garden-variety inconvenience mental anguish, and emotional distress;

3.  Damages for permanent physical impairment and disfigurement;

4.  All other compensatory damages caused by Defendants' actions and

inactions, to be proven at trial;

5. Pre-judgment and post-judgement interest as provided for by law;

6. Attorney fees, costs, and expenses of this action as provided for by law; and

7. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of July, 2025.

WILHITE, ROSE & ROBERTS P.C

/s/ Robert E. Caldwell Jr

This pleading was filed electronically pursuant to Rule 121 §1-26
Original signed pleading is on file in counsel's office

Plaintiff's Address:

c/o Wilhite, Rose & Roberts P.C.
1600 N Ogden Street
Denver, CO 80218